UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEWIS SIMMONS** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-1559** |
| **JENNIFER R. SNOWDEN, ET AL.** | **SECTION: "S" (5)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Re-urged Motion for Summary Judgment filed by defendants, Joshua Wilkerson, Hilmer Hermann, David Rumbelow, and the City of Kenner (the "City") (Doc. # 64), is **GRANTED,** and plaintiff's claims are **DISMISSED WITH PREJUDICE.**

### BACKGROUND

On May 26, 2009, plaintiff, Lewis Simmons, an officer of the New Orleans Police Department ("NOPD"), went to the Hancock Bank in Kenner, Louisiana, and inquired about opening an account. Plaintiff did not have the items required to open an account, and he left the bank. An employee of the Hancock Bank, Jennifer Snowden, contacted the Kenner Police Department and made a suspicious persons complaint regarding plaintiff. Snowden also contacted other banks in the area, including the Whitney National Bank, and gave information concerning plaintiff. She testified that she thought he was suspicious because he paced in front of the counter, appeared to be looking for the security cameras, was dressed in a sweatshirt which was inappropriate for the warm weather, and drove a rental car.

Later that day, plaintiff entered the Whitney National Bank in Kenner, Louisiana to open an account, whereupon a bank employee, Christine McDaniel, based on Snowden's report, informed

the Kenner Police Department of plaintiff's presence at the bank. Plaintiff, unaware that the police had been contacted, met with a Whitney National Bank officer regarding opening a checking account. After being advised that his credit history precluded him from opening an account, plaintiff proceeded to exit the premises. As plaintiff exited the bank, he was confronted by Kenner Police Officers Wilkerson, Hermann, and Rumbelow, who were responding to the armed robbery report. With guns drawn, Wilkerson and Hermann yelled at plaintiff to get on the ground. Plaintiff was momentarily startled and stepped back into the bank. He claims that he then complied with the defendant officers' instructions and got on the ground. The defendant officers claim that plaintiff put his hands into the front sleeve of his sweatshirt rather than showing his hands as ordered, and that they took him to the ground while he was still reaching under his sweatshirt. Wilkerson and Hermann testified that they thought plaintiff might have been reaching for a gun.

Plaintiff claims that while he was on the ground, he informed the defendant officers that he was "a 26," police terminology for a fellow police officer. Rumbelow dry stunned plaintiff with a taser while Wilkerson and Hermann handcuffed him. The defendant officers claim that, upon searching him, they found plaintiff's police credentials, and that, upon questioning, he announced that he was a police officer. The defendant officers detained plaintiff in the bank's security office until they could verify that no crime had been committed and representatives from the NOPD's Public Integrity Bureau arrived to verify plaintiff's identity. Plaintiff was ultimately released without being charged.

Plaintiff brought this suit against the defendant officers and the City pursuant to 42 U.S.C. § 1983 alleging that the defendant officers violated his rights under the Fourth and Fourteenth

Amendments to the Constitution of the United States to be free from unreasonable seizure, unlawful detention, and the excessive use of force during arrest.  Further, plaintiff alleged that the defendant officers' actions constitute false arrest and battery under Louisiana law. Plaintiff also alleges that the City is liable under the theory of respondeat superior because the defendant officers were acting in the course and scope of their employment.

The defendant officers and the City filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The defendant officers argued that they are entitled to qualified immunity regarding plaintiff's constitutional claims because their alleged conduct was objectively reasonable.  Also, the defendant officers and the City argued that plaintiff failed to state claims for false imprisonment and battery under Louisiana law.  In the alternative, defendant officers and the City sought to compel a detailed reply to their qualified immunity defense pursuant to Rule 7(a) of the Federal Rules of Civil Procedure.

The court granted the motion as to plaintiff's Fourth Amendment claim regarding the initial seizure, and denied the motion as to plaintiff's Fourth Amendment claims regarding excessive force and unlawful detention, and his Louisiana state law claims for false imprisonment and battery. The court ordered plaintiff to filed a Rule 7(a) reply as to his Fourth Amendment claims regarding excessive force and unlawful detention.

In his Rule 7(a) reply, plaintiff re-urged the allegations in his complaint, and added the following factual allegations: that the defendant officers knew that plaintiff was a police officer when they viewed his NOPD credentials; Rumbelow used the taser on plaintiff after plaintiff's confusion had passed and he became complaint; the defendant officers searched plaintiff

3

immediately after he was handcuffed and found that he was not armed; plaintiff permitted the defendant officers to search his car for a weapon; plaintiff was handcuffed on the sidewalk for approximately five to fifteen minutes, and detained in the bank office for another thirty minutes; and the police report indicates that Hermann conducted interviews with Whitney National Bank employees, and they advised Hermann that plaintiff was simply trying to open an account.

The defendant officers and the City filed a motion for summary judgment arguing that plaintiff's Rule 7(a) reply does not defeat their qualified immunity defense as to his constitutional claims, and plaintiff cannot prevail on his Louisiana state law claims for false imprisonment and battery. The court denied the motion, but noted that the defendant officers and the City could re-urge their arguments after Hermann was deposed. The defendant officers and the City have filed a re-urged motion for summary judgment.

## ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069,

4

1075 (5th Cir. 1994) (*en banc*). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.     42 U.S.C. § 1983**

Section 1983 provides a remedy against "every person," who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States. 42 U.S.C. §1983; Monell v. Dep't of Soc. Servs., 98 S.Ct. 2018 (1978). Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. Olabisiomotosho v. City of Hous., 185 F.3d 521, 525 n. 3 (5th Cir. 1999).

To pursue a claim under section 1983, plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and; (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. Sw. Bell Tel., LP v. City of Hous., 529 F.3d 257, 260 (5th Cir. 2008); see also West v. Atkins, 108 S.Ct. 2250, 2255-54 (1988).

Plaintiff contend that defendant officers violated his constitutional rights to be free from unreasonable seizure, unlawful detention, and the excessive use of force during arrest as guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States. Defendant officers argue that they did not violate plaintiff's constitutional rights because their actions were objectively reasonable under the circumstances.

**C.     Qualified Immunity**

The defendant officers argue that they are entitled to qualified immunity under 42 U.S.C. § 1983 regarding plaintiff's claim for a violation of his constitutional right to be free from the excessive use of force during arrest. "A qualified immunity defense serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." Atteberry v. Nocona Gen'l Hosp., 430 F.3d 245, 253 (5th Cir.2005) (citation omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 106 S.Ct. 1092, 1096 (1986). "The immunity inquiry is intended to reflect the understanding that 'reasonable mistakes can be made as to the legal constraints on particular police conduct.'" Pasco v. Knoblauch, 566 F.3d 572, 582 (5th Cir. 2009) (citation omitted).

"When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." Club Retro, LLC v. Hilton, 568 F.3d 181, 194 (5th Cir. 2009) (citing McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*)). "To discharge this burden, a plaintiff must satisfy a two-prong test. First, he must claim that the defendants committed a constitutional violation under current law. Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." Atteberry, 430 F.3d at 253; see also Stokes v. Gann, 498 F.3d 483, 484 (5th Cir. 2007). In the qualified immunity context, the objective reasonableness of an officer's belief that his conduct was lawful is a question of law, not fact. See Atteberry, 430 F.3d at 256.

As to the second prong, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" McClendon, 305 F.3d at 323 (quoting Behrens v. Pelletier, 116 S.Ct. 834, 840 (1996)). The sequence of the two-prong analysis is not mandatory, and courts may exercise discretion in deciding which of the two prongs should be addressed first. Pearson v. Callahan, 129 S.Ct. 808, 818 (2009).

**1.    Detention Claim**

The court previously found that the defendant officers are entitled to qualified immunity for plaintiff's claims regarding the initial seizure. However, a lawful seizure "can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Illinois v. Caballes, 125 S.Ct. 834, 837 (2005). Here, plaintiff alleges that he was kept handcuffed on the sidewalk for five to fifteen minutes, and then detained in the Whitney National Bank's security office for approximately thirty minutes until representatives from the NOPD's Public Integrity Bureau arrived.

Wilkerson and Hermann testified that while plaintiff was detained they were verifying plaintiff's police credentials and interviewing bank employees to ensure that a robbery had not occurred. Wilkerson testified that it was necessary to verify that plaintiff was indeed a police officer and that they had difficulty doing so because the NOPD could not immediately find a record of plaintiff due to the fact that he was a new recruit. Wilkerson also testified that he was at the bank for a little over a hour, and that plaintiff "was released long before [he] left." Hermann testified that approximately thirty-five to forty-five minutes elapsed between the time that plaintiff was handcuffed and when plaintiff left the bank. He also testified that, during this time, he was interviewing the bank employees to verify what occurred inside the bank.

Plaintiff stated in his Rule 7(a) reply that he was held for a total of thirty-five to forty-five minutes. Specifically, he stated that he was handcuffed on the sidewalk for about five to fifteen minutes, and that he was held in the bank office for another thirty minutes. At his deposition, plaintiff testified that he was held on the sidewalk for ten to fifteen minutes and held in the bank office for another thirty minutes.

After re-evaluating the testimony regarding the amount of time that plaintiff was held, and considering the importance of plaintiff's testimony, this court finds that holding the plaintiff for thirty-five to forty-five minutes was not unreasonable. During that time, the defendant officers interviewed the bank employees to confirm that a robbery had not occurred and contacted the NOPD to verify plaintiff's identity. As Wilkerson testified, the NOPD could not immediately confirm plaintiff's identity, and that delay cannot be attributed to defendant officers. Therefore, the defendant officers are entitled to qualified immunity as to plaintiff's unlawful detention claims, and those claims are DISMISSED WITH PREJUDICE.

### 2. Excessive Force Claim

The Fourth Amendment protects the right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures. Milligan v. City of Slidell, 226 F.3d 652, 654 (5th Cir. 2000). To succeed in a § 1983 claim for excessive force under the Fourth Amendment, a plaintiff must show that: (1) he suffered an injury; (2) such injury resulted directly and only from the use of force that was excessive to the need, and; (3) such force was objectively unreasonable. Flores v. City of Palacios, 381 F.3d 391, 396 (5th Cir. 2004); Goodson v. City of Corpus Christi, 202 F.3d 730, 740 (5th Cir. 2000). Assessing the reasonableness of a police

officer's use of force involves "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 109 S.Ct. 1865, 1871 (1989). This balancing "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 1872.

Plaintiff alleges that Rumbelow's using a taser on him was unlawful because he was shocked after he became complaint. The defendant officers contend that their use of force against plaintiff was objectively reasonable under the circumstances, because the crime to which they thought they were responding was severe, they believed plaintiff was armed and posed an immediate threat to their safety and the safety of others, and plaintiff actively resisted arrest. McDaniel testified that when the defendant officers knocked plaintiff to the ground, plaintiff was reaching under his sweatshirt. Also, Wilkerson and Hermann testified that plaintiff's hands were tucked up underneath him and they thought that plaintiff was reaching for a gun. According to Wilkerson, before Rumbelow used the taser, the defendant officers believed they were responding to an armed robbery, and had not yet searched plaintiff for weapons, and plaintiff failed to comply with the officers' commands to stick his hands out, bur rather got into a fetal position with his arms under him.

In light of the circumstances surrounding the incident, Rumbelow's use of the taser was objectively reasonable. At the time Rumbelow employed the taser, the officers were responding to an armed robbery call, and they had not yet searched plaintiff for weapons or verified his identity. The defendant officers and McDaniel testified that the plaintiff was reaching under his sweatshirt and the defendant officers reasonably thought that he was reaching for a weapon. Because the brief use of a taser was objectively reasonable, the defendant officers are entitled to qualified immunity for plaintiff's excessive force claim, and that claim is DISMISSED WITH PREJUDICE.

**D.     Plaintiffs' Claims Against the City**

Plaintiffs' § 1983 claims against the City are governed by the Monell doctrine. See Woodard v. Andrus, 419 F.3d 348, 352 (5th Cir. 2005) (citing Monell v. Dep't of Soc. Serv., 98 S.Ct. 2018, 2035 n.55 (1978)). A local governmental body is liable for damages under § 1983 for constitutional violations resulting from official city policy. See Monell, 98 S.Ct. at 2035-36. A municipality or government body cannot be held vicariously liable under §1983 for the constitutional torts of its employees or agents. Id. at 2037.

To establish liability for a constitutional violation against the governmental bodies, the plaintiffs must prove three elements: (1) a policy maker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. Monell, 98 S.Ct. at 2037. Section 1983 does not permit municipal liability predicated on respondeat superior. Bd. of Comm'rs of Bryan County v. Brown, 117 S.Ct. 1382, 1388 (1997), "Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or

imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability. Piotrowski v. City of Hous., 237 F.3d 567, 578 (5th Cir. 2001).

Plaintiff has not shown that there was a violation of his constitutional rights because the defendant officer's actions were reasonable under the circumstances. Therefore, the City is entitled to summary judgment on plaintiffs' § 1983 claims, and those claims are DISMISSED.

**E.     State Law Claims**

Plaintiff alleges that the defendant officers' actions constitute false arrest and battery under Louisiana law. Plaintiff also claims that the City is liable to him for the state law claims under the theory of respondeat superior because the defendant officers were acting in the course and scope of their employment. Defendants argue that they are entitled to summary judgment on plaintiff's false imprisonment and battery claims because the detention and use of force were reasonable.

**1.     False Imprisonment**

Under Louisiana law, the tort of false arrest, or false imprisonment, has two essential elements: (1) detention of a person; and (2) the unlawfulness of such detention. Touchton v. Kroger, 512 So.2d 520, 524 (La. Ct. App. 1987).

Because this court has already determined that the detention was reasonable under the circumstances, the defendants are entitled to summary judgment on the plaintiff's state law false imprisonment claim, and that claim is DISMISSED WITH PREJUDICE.

**2.     Battery**

Louisiana Code of Criminal Procedure article 220 provides:

> A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained.

"The use of force when necessary to make an arrest is a legitimate police function." Kyle v. City of New Orleans, 353 So.2d 969, 972 (La. 1977). However, "[t]he use of excessive force transforms ordinally protected use of force into an actionable battery,[1] rendering the defendant officer and his employer liable for any injuries which result." Manis v. Zemlik, - - - So.3d - - -, 2012 WL 1605701, *3 (La. Ct. App. 2012) (citing Id.; Penn v. St. Tammany Parish Sheriff's Office, 843 So.2d 1157, 1161 (La. Ct. App. 2003)).

Because this court has already determined that the use of the taser was reasonable under the circumstances, the defendants are entitled to summary judgment on the plaintiff's state law battery claim, and that claim is DISMISSED WITH PREJUDICE.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Re-urged Motion for Summary Judgment filed by defendants, Joshua Wilkerson, Hilmer Hermann, David Rumbelow, and the City of Kenner (the "City") (Doc. # 64), is **GRANTED,** and plaintiff's claims are **DISMISSED WITH PREJUDICE.**

---

[1] Battery is a harmful or offensive contact to another without that person's consent, done with an intent to cause the person to suffer such contact. Caudle v. Betts, 512 So.2d 389, 390 (La. 1987).

New Orleans, Louisiana, this __13th__ day of June, 2012.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**